UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

CHARLES ANDERSON,

Plaintiff,

v.                                      CASE No. 8:11-CV-1507-T-TGW

ERIC K. SHINSEKI, Secretary,
Department of Veterans Affairs,

Defendant.

_____

# ORDER

The plaintiff, who is the chief of pulmonary medicine at Bay Pines VA Medical Center, and has been employed as a pulmonary physician at Bay Pines since 1987, alleges that the defendant retaliated against him for complaining about unlawful employment practices by paying him less than he was entitled to, in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. 623(d), and Title VII of the Civil Rights Act, 42 U.S.C. 2000e-3(a). The defendant has filed a Motion for Summary Judgment (Doc. 37), arguing that the plaintiff has not stated a prima facie

case of retaliation and cannot show that the defendant's pay decisions were retaliatory.

To establish a prima facie claim of retaliation, the plaintiff must show that: (1) he engaged in statutorily protected conduct; (2) he suffered an adverse employment action; and (3) there was some causal relation between the statutorily protected conduct and the adverse employment action. Alvarez v. Royal Atlantic Developers, Inc., 610 F.3d 1253, 1268 (11th Cir. 2010); Goldsmith v. Bagby Elevator Co., 513 F.3d 1261, 1277 (11th Cir. 2008).[1] An adverse employment action in the retaliation context is one that "might have dissuaded a reasonable worker from making or supporting a charge of discrimination." Burlington Northern & Santa Fe Ry. Co. v. White, 548 U.S. 53, 68 (2006). The causal link is also construed broadly; thus, "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." Goldsmith v. Bagby Elevator Co., supra, 513 F.3d at 1278. This relatedness requires, at a minimum, that the decisionmaker was aware of the protected activity at the time of the adverse

---

[1] The law developed in Title VII and ADEA retaliation cases is applied interchangeably. Hawthorne v. Baptist Hospital, Inc., 448 Fed. Appx. 965, 968 (11th Cir. 2011).

employment action. <u>Brungart</u> v. <u>BellSouth Telecomms., Inc.</u>, 231 F.3d 791, 799 (11th Cir. 2000), <u>cert</u>. <u>denied</u>, 532 U.S. 1037 (2001).

If the plaintiff establishes a prima facie case of retaliation, the defendant has the exceedingly light burden of producing a legitimate, non-retaliatory reason for the employment decision. <u>Haugabrook</u> v. <u>Cason</u>, 518 Fed. Appx. 803, 807 (11th Cir. 2013). The burden then shifts back to the plaintiff to show that the proffered reason is merely a pretext for unlawful retaliation. <u>See</u> <u>Clark</u> v. <u>Huntsville City Bd. of Educ.</u>, 717 F.2d 525, 529 (11th Cir. 1983).

The plaintiff alleges that the August 2010 Compensation Panel (which appears to have met on July 30, 2010; <u>see</u> Doc. 37-2, pp. 12-13) awarded him a lower amount of market pay than that to which he was entitled in retaliation for engaging in statutorily protected activity (Doc. 40, pp. 14-15). On July 8, 2010, the plaintiff complained to the defendant's Office of Resolution Management that his market pay was less than he should have received due to age discrimination and in retaliation for protected activity that he had engaged in over several years (<u>see</u> Doc. 37-2, p. 2). A few weeks later, a Compensation Panel approved the plaintiff for a $19,619 increase in

his market pay, which raised it to $86,076 (see id., p. 13). The plaintiff's market pay, in addition to his longevity pay of $133,924 (also known as base pay), increased his total pay from $200,381 to $220,000 (see id., pp. 12-13).

The plaintiff argues that, but for his statutorily protected activity, his market pay would have been higher (Doc. 41, p. 10). In this connection, the plaintiff argues that the defendant classified him as a tier 1 physician, instead of a tier 2 physician who has a higher salary cap, in retaliation for his protected activity (Doc. 40, p. 14). Specifically, the tier 2 pay cap was $10,000 higher than the tier 1 pay cap in 2010, and $15,000 higher prior to January 3, 2010 (id.; Doc. 43-9, p. 3; Doc. 43-11, p. 3). Furthermore, the plaintiff contends that, even if he was properly classified as a tier 1 physician, his market pay had been set artificially low for years in retaliation for his statutorily protected conduct (Doc. 40, pp. 15-17; Doc. 41, p. 14).

At oral argument, defense counsel did not dispute for the purposes of this motion that the plaintiff had engaged in protected conduct, or that the decisionmakers were aware of the plaintiff's protected conduct. However, the defendant contends that, as a matter of law, the plaintiff cannot

show that the August 2010 Compensation Panel's pay decision was retaliatory (Doc. 37, pp. 2, 15-16).

The defendant argues first that a jury could not reasonably find that it misclassified the plaintiff as a tier 1 physician because "[t]ier 2 pay is for physicians with significant supervisory experience" (id., p. 4). Specifically, the defendant contends that a Bay Pines physician has to supervise ten employees to be placed in tier 2, and the plaintiff does not have such supervisory responsibility (id.).

The plaintiff responds that this explanation is merely a pretext for retaliation, as the ten-employee supervision rule is not in writing, and it is contrary to the VA Handbook on Pay Administration and the policies of other VA hospitals in the region (Doc. 40, p. 11). Thus, the plaintiff points out that VA Handbook on Pay Administration places section chiefs, such as the plaintiff, in tier 2 (id.; Doc. 41, pp. 17-18; Doc. 43-2, p. 15; Doc. 43-3, p. 10). Furthermore, the plaintiff asserts that no facility within the Bay Pines service network ("VISN 8") appears to follow a ten-employee supervision rule for pulmonologists (Doc. 40, pp. 11-13).[2] Significantly, the ten-

---

[2]The Department of Veterans Affairs is broken down into 23 regions across the country called Veterans Integrated Service Networks (VISNs). Each VISN contains

employee supervision rule was allegedly adopted by Dr. George Van Buskirk, Bay Pines' Chief of Staff, and Dr. Lithium Lin, Bay Pines' Chief of Medicine (id., p. 12), both of whom the plaintiff alleges had a retaliatory animus toward him (see infra).

Additionally, the plaintiff contends that he nonetheless should be classified as a tier 2 physician because he supervises ten employees (id., p. 13). In this connection, the plaintiff states that the pulmonary section runs the medical intensive care unit and treats many patients in critical condition and, therefore, in the course of any given day numerous employees will fall under the plaintiff's direction (id.). Further, the plaintiff states that, although Dr. Lin is listed as the supervisor of respiratory technicians, they were previously supervised by the pulmonary chief, and the plaintiff continues to engage in functions similar to when he officially supervised the respiratory technicians (id.).

The plaintiff, moreover, contends that a jury could reasonably find that retaliatory animus underlies his alleged misclassification in tier 1

---

numerous medical facilities. VISN 8 includes, but is not limited to VA facilities in Tampa, Gainesville, Miami, Orlando and West Palm Beach (Doc. 40, p. 12, ¶34).

because Dr. Van Buskirk and Dr. Lin showed a retaliatory animus toward employees who complained of unlawful discrimination and retaliation (Doc. 41, p. 9). Specifically, the plaintiff alleges that Dr. Lin indicated to Roxanne Lainhart-Bronner, then administrative officer of medicine service, "that the goal was to deter filing of complaints by retaliating against those who filed EEO claims" (Doc. 40-10, ¶4). Further, Dr. Lin purportedly told Lainhart-Bronner on several occasions that Dr. Van Buskirk "looked poorly on those who filed EEO complaints and would ruin their reputations and careers in the VA" (id.). Additionally, the plaintiff alleges that Dr. Lin told the plaintiff when discussing pay that the "reputation of pulmonology" makes giving a raise "very difficult to do," and the plaintiff understood reputation to mean the pulmonology department's EEO complaints (Doc. 40-2, ¶19). Although the defendant denies that these statements were made, such a credibility determination is for the jury (assuming that the statements are admissible at trial). Allen-Sherrod v. Henry County School Dist., 248 Fed. Appx. 145, 147-48 (11th Cir. 2007).

In sum, at this stage of the proceedings, there are unanswered questions regarding whether the plaintiff's classification as a tier 1 physician

was legitimate and non-retaliatory that preclude summary judgment. See Reynolds v. Bridgestone/Firestone, Inc., 989 F.2d 465, 469 (11th Cir. 1993) (on summary judgment, the court must view the evidence and factual inferences therefrom in the light most favorable to the opposing party). However, in order for the plaintiff to prevail on this claim at trial, the plaintiff will have to show that (1) Bay Pines had no rule requiring that a tier 2 physician supervise ten employees and that it was asserted in order to retaliate against the plaintiff for his protected conduct; (2) the rule does exist, but its creation was motivated by retaliatory animus; or (3) the plaintiff satisfied the ten-employee rule, but he was misclassified due to a retaliatory animus.

The plaintiff argues alternatively that, if he was properly classified as a tier 1 physician, his market pay in August 2010 was still artificially low due to retaliation (Doc. 40, pp. 15-16; Doc. 41, p. 14). In this connection, the plaintiff contends that younger, newer, and less accomplished physicians than the plaintiff received much higher market pay, and there is no legitimate non-retaliatory explanation for that substantial disparity (Doc. 40, p. 14).

The defendant responds that a jury could not reasonably find retaliatory the August 2010 Compensation Panel's decision to increase the plaintiff's market pay from $66,457 to $86,076, because it raised the plaintiff's total pay to $220,000, which is the salary cap for a tier 1 pulmonary physician (Doc. 37, pp. 15, 18). See 38 U.S.C. 7431(e)(2), (3). Thus, the defendant contends that the August 2010 Compensation Panel could not have raised the plaintiff's market pay any higher. That contention, however, misses the plaintiff's point.

The crux of the plaintiff's argument in this regard is that retaliatory pay decisions of previous compensation panels kept his market pay artificially low (Doc. 40, pp. 14-15; Doc. 41, pp. 13-14), and despite the August 2010 Compensation Panel's increase of his market pay he was still "receiving less pay than he would have received without the prior retaliation" (Doc. 40, p. 15, n.9).[3] Specifically, the plaintiff contends that, "[h]ad he been given the appropriate amount of market pay when he should have received it"

---

[3]The plaintiff testified that he did not realize that there was a problem with his market pay until May 2010 when a new pulmonary physician was hired and the compensation panel set the new physician's market pay at $112,013, about $45,000 higher than the plaintiff's market pay of $66,457 at that time (Doc. 37, p. 5; Doc. 40, p. 18; Doc. 40-4, p. 3).

-9-

(Doc. 40, p. 14), his market pay would have been higher when the August 2010 Compensation Panel met, and after receiving his mandated longevity pay increase, his total pay in August 2010 would have exceeded $220,000 because longevity pay increases are not subject to the salary cap of $220,000 (see id., pp.14-17; Doc. 41, p. 14, citing 38 U.S.C. 7431(e)(2), (3) (pay caps apply when setting or resetting market pay)). In sum, the plaintiff argues that, but for the defendant's retaliation, his total pay in August 2010 would have been higher.

However, in order to succeed on this argument, it would seem that the plaintiff must prove that, absent a retaliatory animus, his total pay in 2009 would have been at, or near, the salary cap, so that the longevity pay increase in 2010 would push him over the cap. The defendant has made no attempt to demonstrate that the plaintiff cannot make that showing.

Moreover, although this argument is premised upon retaliatory pay decisions outside the charge period, that contention is actionable because the plaintiff argues that those retaliatory decisions continued to adversely affect his pay during the charge period (Doc. 41, p. 14 ("at the very least, even under a tier one analysis after August 2010, the plaintiff was still losing

nearly $2,000 per year")). See 42 U.S.C. 2000e-5(e)(3)(A)("an unlawful employment practice occurs ... when an individual is affected by application of a discriminatory compensation decision or other practice, including each time ... compensation is paid, resulting in whole or in part from such a [retaliatory] decision or other practice"); Gianfrancisco v. Exclesior Youth Centers, Inc., 2012 WL 2878007 at *6 (D. Colo.)(a plaintiff need only show a wage event occurred during the charge filing period that is related to a discriminatory pay decision outside the time for filing a charge).

Significantly, the defendant concedes the plaintiff's claim that his market pay was lower in 2010 due to a prior retaliatory pay decision is actionable (see Doc. 37, p. 11)(the plaintiff's "July 2010 EEO contact is considered timely under the Fair Pay Act insofar as plaintiff is affected by a previous pay decision each time he receives a paycheck"). Furthermore, the defendant has not asserted in its motion a persuasive argument that it is entitled to summary judgment on that claim.

In this connection, the defendant emphasizes there is no basis for finding that the pay decision was retaliatory because the plaintiff is the highest paid pulmonologist at Bay Pines (id., pp. 2, 16). However, that

circumstance does not meaningfully respond to the plaintiff's contention that the plaintiff's experience and credentials warranted a higher market pay. Thus, the plaintiff argues that Dr. Lin did not consider the appropriate market pay factors in making his pay recommendations, which the plaintiff alleges he should have scored well on, and younger, newer, and less accomplished physicians than the plaintiff received much higher market pay, even when the plaintiff's total pay was below the tier 1 pay cap (Doc. 40, p. 14; Doc. 41, p. 15).

Moreover, the plaintiff argues that a jury could reasonably find that the market pay disparity was due to retaliation because Dr. Lin and Dr. Van Buskirk, who allegedly had a retaliatory animus toward the plaintiff, essentially controlled those pay decisions (Doc. 41, pp. 15-16). Thus, the plaintiff alleges that Dr. Van Buskirk was the permanent chair of the compensation panels (Doc. 40, ¶17). Further, Dr. Lin allegedly controlled the information received by the compensation panel, and made recommendations to the compensation panel regarding the plaintiff's market pay, which were accepted by the compensation panels (id., ¶18). Therefore, absent a fully developed record on these issues, it cannot be stated that the plaintiff, as a

matter of law, is unable to prove that he received lower market pay in retaliation for his protected activity.

However, as the plaintiff acknowledges (see Doc. 41, p. 13), if he does prove his retaliation claim, liability on such damages is limited to two years preceding the filing of the charge. 42 U.S.C. 2000e-5(e)(3)(B). Thus, the pertinent statute provides (id.):

> In addition to any relief authorized by section 1981a of this title, liability may accrue and an aggrieved person may obtain relief as provided in subsection (g)(1), including recovery of back pay for up to two years preceding the filing of the charge, where the unlawful employment practices that have occurred during the charge filing period are similar or related to unlawful employment practices with regard to discrimination in compensation that occurred outside the time for filing a charge.

The defendant argues that the plaintiff cannot obtain damages for alleged retaliation that adversely affected his pay prior to 2010 (Doc. 37, pp. 10-11). The basis for this contention is unclear; it appears that the defendant is arguing that liability does not apply to previous pay decisions because each compensation panel's decision constitutes the adoption of a new pay system,

and that the plaintiff was allegedly aware after each compensation panel pay decision of any potential retaliation claim (id., p. 11).

Notably, in making this argument, the defendant does not mention 42 U.S.C. 2000e-5(e)(3)(B), which permits recovery of back pay for a period up to two years preceding the filing of the charge for unlawful employment practices that are "similar or related to" the current charge. The plaintiff argues that the pay decisions of the compensation panels for the two years preceding his EEO charge "were all the result of similar or related to the unlawful employment practices" alleged during the charge period (Doc. 41, p. 13). Specifically, the plaintiff asserts that each compensation panel similarly received recommendations regarding the plaintiff's compensation from Dr. Lin, who allegedly had a retaliatory animus toward the plaintiff, and Dr. Lin's recommendations were always approved by the panel. The defendant has not shown in his motion that a jury could not reasonably find these practices were similar or related.

Therefore, for the foregoing reasons, it is

ORDERED:

That the defendant's Motion for Summary Judgment (Doc. 37) is hereby **DENIED**.

DONE and ORDERED at Tampa, Florida, this 2nd day of October, 2013.

_____
THOMAS G. WILSON
UNITED STATES MAGISTRATE JUDGE